## Street, for and on Behalf, etc. v. Cave Hill Investment Company.

(Decided April 19, 1921.)

### Appeal from Hancock Circuit Court.

1. Charities—Perpetuity—Validity of Bequest for Perpetual Care, Improvement and Embellishment of Tomb, Monument or Burial Lot of Testator, His Family, Relatives or Other Individuals Named.—In the absence of a statute, a bequest for the perpetual care or improvement of the tomb, monument or burial lot of the testator, his family, relatives or other individuals named, is not a bequest for a charitable purpose, and is void as a perpetuity.

2. Charities—Humane Purpose—Validity of Bequest for the Maintenance of Testatrix's Burial Lot in Proper Condition.—Under a statute declaring that a "gift or devise for any other charitable or humane purpose shall be valid," a bequest for the maintenance of the testatrix's burial lot in proper condition is for a humane purpose and therefore valid.

3. Religious Societies—Power to Take and Hold Lands—Wills—Validity of Devise.—In view of section 319, Kentucky Statutes, prohibiting any church from taking or holding the legal or equitable title to exceeding fifty acres of land, a devise of land to trustees, with directions to pay the rents and profits to certain churches for a period of ninety-nine years, cannot be sustained as a devise of an estate for years, and therefore of personal property, since the land itself is withdrawn from public use and the churches themselves take and hold the equitable title to the land within the meaning of the statute.

4. Religious Societies—Power to Take and Hold Lands—Wills—Validity of Devise.—Since churches cannot exist without pastors or without buildings in which to worship, a devise of land to trustees, with directions to pay the rents and income therefrom for a period of ninety-nine years to certain churches to be used in supplementing the pastors' salaries and keeping the buildings repaired and insured, cannot be sustained on the ground that it is for the benefit of an independent charity, but is for the benefit of the churches themselves and therefore invalid.

5. Religious Societies—Right to Hold Land—Validity of Devise Directing Land to Be Sold and Proceeds Divided Among Certain Churches.—Where testatrix directed that at the end of ninety-nine years certain land should be sold and the proceeds divided among certain churches then in existence, the devise is valid as a

devise of personal property and not of land, and section 319, Kentucky Statutes, limiting the right of religious societies to hold land, does not apply.

6.  Remainders—Acceleration.—The testatrix devised land to trustees with directions to pay the income and profits therefrom to certain churches for a period of ninety-nine years, and directed that, at the expiration of that period, the land should be sold and the proceeds divided among the churches then in existence: Held, that the second devise will not be accelerated for the reason that the only way that it can become effective is by a sale of the land, and the testatrix did not intend that the land should be sold until the expiration of ninety-nine years, and for the further reason that if the land were now sold, the proceeds would go to churches which might never be entitled to receive any portion thereof.

7.  Wills—Action to Determine Validity—Persons Who May Attack.—Where a devise of land for ninety-nine years is void, the heirs of the testatrix are entitled to recover the land for that period of time.

R. M. STUART and G. W. JOLLY for appellant.

G. D. CHAMBERS and W. P. SANDIDGE for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

Eliza Webb died on November 8, 1917, leaving a will which was duly probated by the Hancock county court. Only the following clauses of the will are material to this controversy:

"Item 11.   To the Cave Hill Investment Company, one thousand dollars, the income from which is to be used for keeping my lot in that cemetery in good condition, but should the monument thereon be damaged or destroyed, then part of this amount shall be used to replace it and then the balance shall be used for keeping the said lot in good condition."

"Item 16.   All the farm land in Hancock county, Kentucky, which I own at my death consisting of the land I bought from Jarboe, the land I bought from Polk, the land I bought from Sterrett, the Mitchell farm, the last mentioned farm named the Mitchell farm, is to belong to my brother Franklin Lander during his natural life, I will and devise and decree all of said land to the following named M. E. Churches to have the income therefrom for the support of said churches for the period of 99 years, namely, the M. E. Church of Hawesville, Kentucky, the M. E. Church of Midway, Kentucky, the Sandy Creek Union Church near Skillman, Kentucky, the M. E. Church of Hawesville, Kentucky, used by the colored people, said

churches will take the net income of said farms as follows: The Hawesville M. E. Church for white people one-third of said net income, the Sandy Creek Union Church, one-third of said net income, the Midway M. E. Church, one-sixth of said net income and the Hawesville M. E. Church for colored people one-sixth of said net income.

"In no event shall any part of the income be used for building new churches but same shall be used for the support of the churches that now exist at said points or that may be rebuilt by said congregation, and I desire that said net income shall be used to supplement the pastor's salary and for repairing the buildings and keeping them insured against fire and tornado. I desire that Eugene Sterrett during his lifetime and membership in the Sandy Creek Union Church shall represent that church, and that E. J. Snyder shall represent the Midway M. E. Church, and Ed. Lamar shall represent the Hawesville M. E. Church for white people, and that Steve Miller shall represent the M. E. Church for colored people, in leasing said land and managing same and collecting the rents therefrom, and at the death of said persons or any of them, or in case they should remove from the jurisdiction of said church or churches or decline to act, then in that event, I desire that the church shall annually designate a representative of said church or churches to assist in carrying out this provision of my will and the money collected by the representatives of said church or churches in the proportion designated above shall annually be turned over to the stewards of the respective churches for use as herein directed. I request said representatives of said churches to supervise and manage farm and buildings and keep them in reasonably good condition and make such improvements thereon as to them may seem best to yield a reasonably good income from said farm, and I do not desire that any discrimination shall be made against the Sandy Creek Union Church by reason of its being a Union Church, but that the M. E. stewards of said church are to receive and expend that part of income from said farm for the benefit of all the people that worship at said church. In the event of any one or more of the aforesaid church or churches should cease to exist, then the church or churches remaining in existence shall take in the same ratio mentioned above the rents from said farms. The farm or farms mentioned above contain about three hundred and ninety acres. William Lambert has a lease on the farms here named for three

years which is to stand and all bequests are to be paid out of the proceeds from farm before the churches' endowment begins.''

''Item 17.   At the expiration of the use of said land as directed in Item 16, by said churches, then said land shall be sold and the proceeds of said sale shall be given absolutely to said church or churches then in existence.''

Section 2360, Kentucky Statutes, is as follows:

''The absolute power of alienation shall not be suspended, by any limitation or condition whatever, for a longer period than during the continuance of a life or lives in being at the creation of the estate, and twenty-one years and ten months thereafter.''

Section 319, Kentucky Statutes, is as follows:

''No church or society of Christians shall be capable of taking or holding the title, legal or equitable, to exceeding fifty acres of ground; but may acquire and hold that quantity for the purpose of erecting thereon houses of public worship, public instruction, parsonage, or graveyard.''

Suing for herself and all the other heirs at law of the testatrix, Sallie Street brought this action to recover the $1,000.00 bequeathed by clause 11, on the ground that it is a perpetuity, and also the farm, on the ground that clauses 16 and 17 violate section 319, *supra*.   A demurrer was sustained to the petition and the petition dismissed. Plaintiff appeals.

(1)   We shall first consider the validity of the bequest to the Cave Hill Investment Company for the purpose of keeping the testatrix's lot in good condition. It may be conceded that, in the absence of a statute, a bequest for the perpetual care, improvement and embellishment of a tomb, monument or burial lot of a testator, his family, relatives or other individuals named, is not ordinarily regarded as a bequest for a charitable purpose and is void as a perpetuity.   5 R. C. L., p. 336.   But our statute is not restricted to charitable purposes, but declares that a gift or devise for ''any other charitable or humane purpose'' shall be valid.   Section 317, Kentucky Statutes.   The word, ''humane,'' is used in the sense of humanizing or refining. Whatever tends to develop those higher feelings which prompt mankind to pay proper respect to the dead necessarily has a refining effect. Hence, a bequest for the erection of a monument in the family burial lot, or for the maintenance of the lot in proper con-

dition, is a humane purpose within the meaning of the statute. Ford v. Ford, 91 Ky. 572. It follows that the bequest in question is valid.

(2) The validity of the devise in clause 16 presents a more serious question. It is first insisted that the devise is valid because the property devised, being an estate for years, is personal property and not land. It is true that an estate for years is regarded as personal property for certain purposes, but manifestly this rule is not applicable to the facts here presented. The words of the statute are: "No church or society of Christians shall be capable of taking or holding the title, legal or equitable, to exceeding fifty acres of ground." This language is broad and comprehensive. It prohibits the taking or holding of either the legal or equitable title to land in excess of the designated quantity. Its purpose is to prevent churches or religious societies from accumulating large bodies of land, and no legal fiction should stand in the way of its enforcement. Of course, if a devise for ninety-nine years is valid, then, for like reasons, a devise for a thousand years would be valid, and there would be no limit to the quantity of land that a church might hold under this form of devise. We are therefore constrained to the view that where land is devised to trustees, with directions to pay the rents and profits to certain churches for a period of ninety-nine years, the land itself is withdrawn from public use, and the churches themselves take and hold the equitable title to the land within the meaning of the statute.

But it is insisted that the devise is not for the benefit of the churches themselves, but for certain designated charitable uses, such as repairs, insurance and supplementing the pastors' salaries, and is therefore valid under the rule laid down in Kinney v. Kinney's Exr., 86 Ky. 610, 6 S. W. 593, where a devise of land to the Methodist Episcopal Church South, "to be applied to foreign missions," was upheld on the ground that the land was not devised to the church for its own use, but was devised to the church in trust to be applied by it to a charitable purpose. Here the language of the will is: "I will and devise and decree all of said land to the following named M. E. churches to have the income therefrom for the support of said churches for the period of 99 years." After naming the churches, the will proceeds as follows: "In no event shall any part of the income be used for building

new churches but same shall be used for the support of the churches that now exist at said points or that may be rebuilt by said congregations, and I desire that said net income shall be used to supplement the pastor's salary and for repairing the buildings and keeping them insured against fire and tornado.'' The difference between the two cases is at once apparent. In the Kinney case the devise was to be applied by the church to foreign missions, and therefore to an activity in which the church might or might not engage, and consequently to a purpose not necessary to the existence of the church. In this case, however, the income from the land is to be applied for the purpose of supplementing the pastors' salaries, keeping the churches in repair and paying the insurance premiums. Churches cannot exist without pastors or without buildings in which to worship. Therefore, where land is devised with directions to apply the income for such purposes, the devise is for the use of the church itself, and not merely for the purpose of maintaining an independent charity. Were we to adopt a contrary view, a church might hold an unlimited quantity of land just so the income was apportioned to certain activities of the church, and this would defeat the statute. Though the statute permits a church to hold not exceeding fifty acres of ground, it may not hold that quantity except for the purpose of erecting thereon houses of public worship, public instruction, parsonage, or graveyard, and since under the devise in question, the churches may not hold any of the land for such purposes, it necessarily follows that the entire devise is void.

(3)   By clause 17 the testatrix directed that, at the expiration of the use of the land referred to in clause 16, the land should be sold and the proceeds given absolutely to said church or churches then in existence. Under this devise the church or churches then in existence will not take or hold any title to the land itself. On the contrary the land will be sold, the title will pass to the others and the churches will receive only the proceeds of the sale. That being true, it is a devise of personalty and not of land, and the statute in question does not apply. It follows that the devise is valid. Chambers v. Higgins, 49 S. W. 436, 20 K. L. R. 1425.

(4)   Here, then, we have a case where the prior devise is void and the subsequent devise, valid, and it is necessary to determine whether the doctrine of acceleration applies. It seems to us that the doctrine is not ap-

plicable for several reasons. In the first place the only way by which the subsequent devise may become effective is by a sale of the land, and it is clear that the testator did not intend that the land should be sold until the expiration of ninety-nine years. Not only so, but as only those churches in existence at the expiration of ninety-nine years are to receive the proceeds, it is clear that if the land were now sold, the proceeds would go to those who might never be entitled to receive any portion thereof.

The devise for ninety-nine years being void, it follows that the heirs of the testatrix are entitled to recover the land for that period of time, and that the petition stated a cause of action so far as that devise is concerned. Compton v. Moore, 156 Ky. 544, 161 S. W. 540.

Judgment reversed and cause remanded for proceedings consistent with this opinion.

Whole court sitting.