## Epperson et al. v. Clintonville Cemetery Co. et al.

February 7, 1947.

William B. Gess and Scott Reed for appellants.

Hunt, Kessinger & Lisle, George Batterson and J. J. McBrayer for appellees.

OPINION OF THE COURT BY JUDGE LATIMER—Affirming.

This appeal involves a contest between the heirs of Robert Epperson as intervening petitioners and the Clintonville Cemetery Company.

George Dawson, under the terms of his will, devised and bequeathed the whole of his estate to his wife, Eva Dawson, for and during her natural life. He provided:

"After her death I desire that Ethelyn Dobrowsky be given Five Thousand ($5000.) Dollars, and to the Clintonville Cemetery Company Ten Thousand $10000. as an endowment fund (no part of the principal to be spent.)

"The directors of the Cemetery Company shall invest the fund, and all investments must be approved by *by* Bourbon County Court. The balance after the above amounts I wish divided into three equal sums and one part given to Wallace Epperson, one to Robert Epperson and the other part divided equally between Ada Epperson and May Epperson, daughters of James Epperson."

Item 2 of the codicil to the will reads: "In case there should prove to be no company or association in existence to take charge of and manage the fund of $10,000.-00 devised by my aforesaid will to the Clintonville Cemetery Company, I request and direct that the Bourbon County Court appoint three responsible persons residing in the vicinity of Clintonville, Bourbon County, Kentucky, to act as Trustees of said fund, to take charge of and administer said fund, subject to the supervision of the Bourbon County Court, for the purposes and in the manner set out in my aforesaid will."

The intervening petitioners insist that the above portions of the testator's will are void in that the testator created a trust for an uncertain purpose, and further because it was violative of the rule against perpetuities. They ask the court to adjudge the bequest of $10,000

to the Clintonville Cemetery Company to be void, and to decree that this sum should pass and inure to the residuary legatees under the will.

In pleadings the Cemetery Company alleged that it was a charitable corporation authorized by the terms of an Act of the General Assembly of Kentucky in 1876 to provide a suitable cemetery at Clintonville, Bourbon County, Kentucky, for the burial of the dead.

Upon these allegations the court below adjudged that the bequest to the Cemetery Company was valid and enforcible. From that judgment the appellants prosecute this appeal.

Counsel for appellants have faithfully and vigorously espoused the cause of their clients. In their brief, so well prepared as to indicate much labor and research, they have advanced numerous arguments in support of their contentions. In the first place, they insist that the answer of the Cemetery Company reveals that it is making a will for the testator. This, they say, is obvious from the pleadings of the Cemetery Company as evidenced by the following two excerpts:

"That the will of said testator contemplated the use of the net income on said investment for the maintenance, care and upkeep of the said cemetery.

"Said defendant states that under a codicil to his will, G. W. Dawson, further provided, that, if the Clintonville Cemetery Company of Bourbon County should cease to exist or should not take charge of and manage said fund, the Bourbon County Court shall appoint three responsible persons residing in the County of Bourbon, to act as Trustees of said fund and to take charge and administer said fund for the purposes set out in his will, namely, as an endowment fund for the maintenance, care, and upkeep of said cemetery."

Since this question is inseparable from the one as to whether or not the bequest directly violates KRS 381.-260, on account of uncertainty of purpose and designated beneficiaries, it must stand or fall as a logical sequence to our conclusion upon that question.

Appellants insist that under KRS 381.260, where a testator attempts to create a trust and names a charitable or humane institution as a trustee thereof, the tes-

tator is required (1) to point out with reasonable certainty the purpose of the gift, and (2) to designate the beneficiaries of the gift with reasonable certainty. They seem to rely heavily upon the case of Spalding, et al. v. St. Joseph's Industrial School, et al., 107 Ky. 382, 54 S. W. 200, 21 Ky. Law Rep. 1107. They argue that the only conceivable manner by which the bequest in the instant case might be saved is by the application of the doctrine of cy pres, a prerogative power not adopted in this state.

We must, then, examine the above provisions of the will to ascertain if there is reasonable certainty of purpose. In the first place, there can be no serious doubt that a bequest to, or in trust for, a public cemetery clearly comes under the provisions of KRS 381.260. See Ford v. Ford's Ex'r., 91 Ky. 572, 16 S. W. 451, 13 Ky. Law Rep. 183; Street v. Cave Hill Investment Co., 191 Ky. 422, 230 S. W. 536. There could be nothing more reasonably certain than the following: "* * * to the Clintonville Cemetery Company Ten Thousand $10000 as an endowment fund (no part of the principal to be spent.)" The word "endowment," followed by the parenthetical expression "no part of the principal to be spent" is significant. An understanding of the meaning of the word "endowment" is an obvious prerequisite to a proper determination of this case. Webster's International Dictionary defines endowment as "an act of bestowing a dower, fund or permanent provision for support; that which is bestowed or settled upon a person or an institution; property, fund or revenue permanently appropriated to any object; as, the endowment of a church, a hospital, or a college." In 20 Corpus Juris, page 1254, is found a legal definition of endowment, which is: "Property or pecuniary means bestowed as a permanent fund, as the endowments of a college, a hospital or a library. It is understood in common acceptance as a fund yielding income for the support of an institution, and is not an apt word to describe a gratuitous conveyance of the title to a piece of real estate." See 30 C. J. S., page 243.

Applying, then, the definitions above in connection with the purpose for which the Cemetery Company was organized and its charter provided, the purpose then was for the upkeep and maintenance of the Cemetery, and for the benefit of all the burial lots in the Cemetery. We

think, then, it clear that the bequest of $10,000 to the Clintonville Cemetery Company as an endowment fund created a valid trust for the humane purpose of supporting and maintaining the Cemetery and for the benefit of those persons buried therein and the next of kin of those persons.

The instant case may easily be distinguished from the Spalding case relied upon by the appellants. In the Spalding case the charity was so general that in order to make the bequest particular it would require a power to make a will for the testator. In the instant case there can be no doubt as to the object. The testator designated it by name. He evidently understood what an endowment meant, else he would not have parenthetically said "no part of the principal is to be spent." He wanted the fund invested, and so cautious was he that he directed that the investment be approved by the Bourbon County Court. He wanted this particular cemetery to benefit. It was stated in appellees' brief, and there is no contradiction or denial of the statement, that this is the cemetery in which he and his loved ones owned burial lots; in which the deceased members of his family had been buried, and in which he himself is now buried. We cannot agree, therefore, with appellants that there is such uncertainty as would violate KRS 381.260.

We now come to the question as to whether or not this was a bequest which might inure to the profit of officers or shareholders of the Company, and thus be in violation of the rule against perpetuities. This presents the most difficult problem although not stressed so much by the appellants.

Appellants contend that by the charter of the Company it is possible that the bequest might inure to the profit of the officers and shareholders. They contend that while the Cemetery Company pleads that no stock was issued and no dividends paid, it is legally possible, under the terms of the charter, for both these events to occur. Hence, the Company is not bound by its charter to confine itself to charitable and humane work and to continue non-profit. Thus the Cemetery Company seeks to take a bequest in perpetuity where the trustee is not bound by the terms of its charter to be a non-profit organization.

The Clintonville Cemetery, as stated above, was incorporated in an Act of the General Assembly entitled "An Act Incorporating the Clintonville Cemetery Company of Bourbon County, Kentucky," which was approved February 23, 1876, and is now a part of the laws of Kentucky. Under the Act the corporation was empowered to take, acquire, hold by gift, purchase, or devise land in the vicinity of Clintonville, not exceeding 20 acres, for the purpose of a cemetery. The Act further provided: "The corporators shall open books for the subscription of stock in shares of fifty dollars and issue certificates of stock when the money is paid in, the books to be kept open for sixty days after this charter is granted, and each person so subscribing shall be considered a member of the corporation, and shall be entitled to vote in all meetings of the corporation; but should a stockholder sell or transfer a lot or lots he also sells or transfers his stock."

It is the above provision that appellants insist makes the nature of the Clintonville Cemetery a potentially profit organization, and would thus defeat a bequest which sets up a trust for a humane purpose. It will be noted in the provision above that the Cemetery Company was authorized to keep its books open for the subscription of stock only for 60 days immediately following the granting of the charter. No stock was issued during that period, and throughout the ensuing period of about 70 years the corporation has not been conducted for profit and no person has ever received any profit from the operation thereof. That prescribed time has elapsed. There is no provision in the charter authorizing the payment of dividends on the stock issued. It does provide that a purchaser of stock shall become a member of the corporation, but should he sell his lot in the Cemetery he must also sell or transfer his stock.

After a careful consideration of the act of incorporation in the light of the pleadings herein, we conclude that the Cemetery Company is, and, under the Act creating it, must remain a non-profit organization. It follows, then, that the contention of the appellants concerning this portion of the case must also fail.

The judgment is affirmed.